MADISON HOTEL, Appellee,

v.

HOTEL AND RESTAURANT EMPLOYEES, LOCAL 25, AFL–CIO, Appellant.

No. 96–7270.

United States Court of Appeals, District of Columbia Circuit.

Argued En Banc March 18, 1998.

Decided June 2, 1998.

Jeremiah A. Collins argued the cause for appellant. With him on the briefs were Mady Gilson, David M. Silberman, and Francis R.A. Sheed.

Jonathan W. Greenbaum argued the cause and filed the brief for appellee.

Before: EDWARDS, Chief Judge, WALD, SILBERMAN, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Opinion concurring in the judgment filed by Circuit Judge KAREN LeCRAFT HENDERSON.

RANDOLPH, Circuit Judge:

Hotel and Restaurant Employees, Local 25, AFL–CIO, appeals from the judgment of the district court vacating an arbitration award in Local 25's favor. We reverse.

In July 1992, the Madison Hotel laid off its bus employees, abolished the bus employee classification, and reassigned the bus duties to the Hotel's waiters. The layoff prompted a dispute with Local 25, the union representing the Hotel's food and beverage employees. The dispute proceeded to arbitration. In a January 1994 opinion, the arbitrator found that the Hotel "violated the layoff, seniority and classification provisions of the [collective bargaining agreement], ... insofar as it eliminated completely the Bus Employee classification, laid off all of the Bus Employees and transferred the substantial remaining Bus Employee duties to the Waiters, in the absence of a demonstrated legitimate business reason...." J.A. 31. The arbitrator directed the Hotel "to reinstate the [bus employees] to their former positions and to make them whole for all losses, including seniority, attributable to their improper layoff." J.A. 36.

When all of the laid-off bus employees indicated that they no longer sought reinstatement to their former positions, the Hotel claimed the matter was at an end. Invoking the arbitration award, Local 25 insisted that the Hotel restore the bus employee classification and hire new employees to fill the positions. The parties returned to the arbitrator for clarification, whereupon the arbitrator explained that his award required the Hotel "to reinstate the Bus Employee classification ... [,] to fill the number of Bus Employee positions ... which existed at the time of the layoff and to operate with such Bus Employee classifications until it can demonstrate an appropriate basis, under the [collective bargaining agreement], to abolish such positions." J.A. 49.

The Hotel then sued to vacate the award. The district court granted summary judgment in the Hotel's favor. Among other things, the district court found that, because the original grievance was filed "on behalf of" the bus employees, arbitration extended only to whether the rights of those employees had been violated; accordingly the arbitrator exceeded his authority in ordering the Hotel to restore the bus classification. *Madison Hotel v. Hotel & Restaurant Employees Local 25*, 955 F.Supp. 1 (D.D.C.1996).

We believe the district court had no adequate basis for disagreeing with the arbitrator's view of what was before him for decision. In his first opinion, the arbitrator framed the dispute this way: "Whether the Hotel violated the Agreement by its abolishment of the Bus Employee position, its transfer of the duties of the Bus Employees to other positions and its layoff of the Grievants in July 1992 and, if so, what is the appropriate remedy?" J.A. 19. Given this statement, the arbitration encompassed not only the propriety of the Hotel's laying off the bus employees, but also its abolishing the bus classification and transferring the bus employees' duties to the waiters. The "scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 765, 103 S.Ct. 2177, 2182–83, 76 L.Ed.2d 298 (1983). An arbitrator's view of the issues submitted to him for arbitration therefore receives the same judicial deference as an arbitrator's interpretation of a collective bargaining agreement.[1] *See, e.g., Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus.*, 84 F.3d 1186, 1190 (9th Cir.1996); *Richmond, Fredericksburg & Potomac R.R. v. Transportation Communications Int'l Union*, 973 F.2d 276, 280 (4th Cir.1992); *El Dorado Technical Servs., Inc. v. Union General De Trabajadores de Puerto Rico*, 961

---

1. This question—the scope of the submission to the arbitrator—should not be confused with the question of arbitrability—whether the employer and the union agreed in the collective bargaining agreement to put a particular issue to arbitration. The latter question is reviewed by a federal court *de novo*. *See, e.g., Williams v. E.F. Hutton & Co.*, 753 F.2d 117, 119 (D.C.Cir.1985); *Davis v. Chevy Chase Fin. Ltd.*, 667 F.2d 160, 166–67 (D.C.Cir.1981). The former, as we have just indicated, is not.

F.2d 317, 321 (1st Cir.1992); *Lattimer–Stevens Co. v. United Steelworkers of America, Dist. 27, Sub–Dist. 5,* 913 F.2d 1166, 1170 (6th Cir.1990); *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 302 (3d Cir.1982); *Waverly Mineral Prods. Co. v. United Steelworkers of America, Local No. 8290,* 633 F.2d 682, 685–86 (5th Cir.1980). The Hotel has identified nothing to cast the slightest doubt on the arbitrator's judgment about the scope of this arbitration. The Hotel conceded at oral argument that there is no record of any formal "submission" of issues for arbitration.[2] As is commonplace in arbitration proceedings, the scope of the issues developed informally during the course of the parties' presentations. *See, e.g.,* ELKOURI & ELKOURI, HOW ARBITRATION WORKS 323–24 (5th ed.1997). The Hotel never objected to the arbitrator's framing of the issue in his first written opinion, and it said so at oral argument.[3]

A copy of Local 25's initial grievance letter to the Hotel, submitted to us on appeal, recites the union's objection to the Hotel's layoff of one of the bus employees. The letter's caption reads, "Re: Bus Employees/Local 25 Members," and its first sentence states: "This is to advise you that the Hotel & Restaurant Employees Local 25, AFL–CIO, pursuant to our collective bargaining agreement is opposing and taking to arbitration the action taken by your establishment against the above-captioned employee." We place no weight on this letter. As both parties now concede, the letter did not purport to encompass all the questions the parties intended to place before the arbitrator; its function was to set the informal arbitration process in motion.[4]

Quoting from the first paragraph of the arbitrator's opinion, the district court thought it significant that Local 25 had initiated arbitration "on behalf of" the former bus employees, the theory being that the only permissible remedy could run to them. The quoted language will not bear the weight the district court placed on it. From the second paragraph of his opinion onward, the arbitrator treated the Hotel's unilateral abolishment of the bus employee classification as a chief topic of dispute between the parties. This firmly indicates what the parties believed they were arbitrating, and what the arbitrator believed he had been called upon to resolve.

■■■■ The district court also found that the arbitrator's June 1996 final award "did not draw its essence from the collective bargaining agreement." *Madison,* 955 F.Supp. at 3. The Hotel thinks this is correct because the arbitrator improperly considered some contractual provisions while ignoring others, and because he imposed "extra-contractual" obligations on the Hotel. Of course, an arbitration award that fails to draw its essence from the collective bargaining agreement cannot stand. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). While courts therefore may review the substance of an arbitration award, only the narrowest cir-

---

**2.** Counsel for the Hotel acknowledged that the submission "was an oral submission to the arbitrator which is set forth in his opinion." When the Court asked whether this meant that "the submission" could only be defined by reference to "the arbitrator's definition of the grievance and the issue," counsel answered, "That's correct."

**3.**

| | |
|---|---|
| The Court: | "Where is it, in all these documents, that you say to the arbitrator, 'Hey, you can't arbitrate the abolishment of the classification'?" |
| Counsel: | "We haven't set that out." |
| The Court: | "Was there some argument ... in the arbitration where you said to the arbitrator ..., 'You're not understanding this correctly, that's not before you'?" |
| Counsel: | "No Your Honor." |

---

**4.** Counsel for Local 25 stated that the "letter ... is not regarded as a jurisdictional type of document," that it "was sent to the employer to initiate the proceedings," and that "there is absolutely nothing in the parties' contract which says that that letter ... defines the limits of the arbitrator's authority in a subsequent case." Counsel for the Hotel agreed, noting that "the first step in the [arbitration] process is the filing of a grievance, which is what this letter is," and that the grievance letter "just gets us to the arbitration arena."

cumstances will justify setting the award aside. An arbitrator cannot, for instance, "render[ ] a judgment based on external legal sources, wholly without regard to the terms of the parties' contract." *American Postal Workers Union v. United States Postal Serv.*, 789 F.2d 1, 8 (D.C.Cir.1986). Nor can an arbitrator simply ignore the contract and "dispense his own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361. But if an arbitrator was "arguably construing or applying the contract," a court must defer to the arbitrator's judgment. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987). Courts "have no business … determining whether there is particular language in the written instrument which will support the claim" submitted for arbitration. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960). The arbitrator's June 1996 final remedy falls well within the bounds of this deferential standard. In a series of thorough opinions explicitly considering the relevant contract provisions, the arbitrator decided upon the remedy of restoring the bus classification. That the arbitrator gave more weight to some provisions—such as the seniority and classification provisions—and less weight to others—such as the Management Rights Clause—than the district court or the Hotel might have preferred is not a permissible basis for vacating the award. It should hardly need repeating that "courts have no business overruling [an arbitrator] because their interpretation of the contract is different from his." *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362; *see United States Postal Serv. v. National Ass'n of Letter Carriers*, 789 F.2d 18, 20 (D.C.Cir.1986). The "parties having authorized the arbitrator to give meaning to the language of the agreement," courts cannot "reject [the] award on the ground that the arbitrator misread the contract." *Misco*, 484 U.S. at 38, 108 S.Ct. at 370–71.

As to the Hotel's complaint about the arbitrator's imposing "extra-contractual"

obligations, it is well-established that the "labor arbitrator's source of law is not confined to the express provisions of the contract." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). The parties' past practice, the "industrial common law" of the hotel business, the structure of the contract as a whole—all of these matters could be properly considered by the arbitrator in interpreting the contract and formulating the award. *See id.* at 581–82, 80 S.Ct. at 1352–53; *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361; *American Postal Workers*, 789 F.2d at 5; *see generally* ELKOURI & ELKOURI, *supra*, at 470–515. An arbitrator's familiarity and experience with such matters is commonly acknowledged as one of the primary considerations favoring judicial deference to arbitration awards. *See, e.g., Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1352–53. In this case it is enough to sustain the award that the arbitrator, permissibly drawing on the sources just mentioned as well as on the explicit provisions of the contract itself, "purport[ed] to be interpreting the contract" in rendering his final decision. *Utility Workers Union of America, Local 246 v. NLRB*, 39 F.3d 1210, 1216 (D.C.Cir. 1994).

The district court erred in concluding that the arbitrator's final remedy exceeded the scope of the issues presented to him for arbitration and did not draw its essence from the collective bargaining agreement. Accordingly, the decision of the district court is reversed.

*So ordered.*

KAREN LeCRAFT HENDERSON, Circuit Judge, concurring in the judgment:

I agree that the district court should be reversed but on the narrow ground that the Hotel failed to object before the arbitrator to *restoration* of the eliminated bus positions—the issue on which Local 25 sought clarification. *See* 12/14/94 Letter from Union Requesting Clarification from Arbitrator (JA 87–89).[1] By not objecting to submission of

---

**1.** In opposing Local 25's clarification request, the Hotel's counsel argued only that the arbitrator lacked authority to *fill* the restored, but vacant, positions. *See* Letter from Hotel Counsel to Arbitrator in Opposition to Union Clarification Letter at 1 (JA 90) (whether "the hotel must hire new buspersons to fill the classification" "is not before the arbitrator").

the restoration issue to the arbitrator, the Hotel waived its right to challenge in court the scope of the submission and the arbitrator's authority thereunder to resolve the issue.[2] *Cf. Davis v. Chevy Chase Fin. Ltd.,* 667 F.2d 160, 165 (D.C.Cir.1981) (finding no waiver because party "did ... raise the arbitrability question" before arbitrator "with full reservation of his right to have the arbitrator's determination subjected to judicial review"); *see also United Industrial Workers v. Government of the Virgin Islands,* 987 F.2d 162, 168 (3d Cir.1993) ("[B]ecause arbitrators derive their authority from the contractual agreement of the parties, a party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration and failing to object on the grounds that there was no agreement to arbitrate."); *Jones Dairy Farm v. Local No. P–1236, United Food & Commercial Workers Int'l Union,* 760 F.2d 173, 175 (7th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985); *George Day Constr. Co. v. United Bhd. of Carpenters & Joiners of Am., Local 354,* 722 F.2d 1471, 1475–76 (9th Cir.1984); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980). Once the bus positions were restored, they became, as the arbitrator observed unexceptionably, "subject to being filled as vacancies in accordance with the [Collective Bargaining] Agreement." 6/6/96 Clarification Letter at 3 (JA 43) (quoting 2/6/95 Clarification Letter at 3 (JA 40)). The arbitrator was therefore justified in directing the Hotel to "fill" and "operate with" the restored busing positions "until it can demonstrate an appropriate basis under the Agreement, to abolish such positions." *Id.* at 9 (JA 49). Given the Hotel's waiver, there is no need to explore here the metes and bounds of arbitral authority, as the majority has done. Since the majority has chosen to do so, however, I will respond briefly.

First, it should be noted that our circuit is not always eager to enforce arbitration agreements so strictly. *See Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1489 (D.C.Cir.1997) (holding arbitration agreement binding on Title VII plaintiff only if employer agrees to pay arbitration costs). Second, I do not agree with the majority's assertion that there is "nothing to cast the slightest doubt on the arbitrator's judgment about the scope of this arbitration." Majority Op. at 4. The arbitrator's first decision, on the merits, treated the arbitration as having been brought on behalf of and to provide a remedy for the named grievants only—a view the arbitrator acknowledged in each of the clarification letters. *See* 2/6/95 Clarification Letter at 2 (JA 39) ("The Arbitrator notes that the remedy set forth in the [January 2, 1994] Opinion contemplated reinstatement of, and a make whole award to, the identified Grievants *only.* That is, nothing in this Arbitration proceeding raised, *or was intended to resolve,* any issue with respect to any potential remedy to any individuals other than the identified Grievants.") (emphasis added); 6/6/96 Clarification Letter at 8 (JA 48) ("[I]t is correct that the Arbitrator, in finding the violation, balanced Management's right to manage, including the right to determine staffing, against *the Grievants'* seniority rights ....") (emphasis added). The tenor of the merits decision presumably reflects the intent of the parties at that time, as expressed in their briefs and at the hearing. And the scope of an arbitrator's authority is limited to those subjects the parties intend *to submit to arbitration. See Williams v. E.F. Hutton & Co.,* 753 F.2d 117, 119 (D.C.Cir. 1985) ("There is no duty to arbitrate matters not subject to the arbitration agreement, *and no authority on the part of arbitrators to consider matters not necessary to the resolution of disputes actually submitted.*") (citing *Davis,* 667 F.2d at 165) (emphasis added); *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Post Co.,* 442 F.2d 1234, 1236 (D.C.Cir.1971) ("In determining the scope of an arbitrator's authority we look to two sources: the collective bargaining agreement, *and the submission of the parties to the arbitrator.*") (emphasis added); *Matteson v. Ryder Sys. Inc.,* 99 F.3d 108, 114 (3d Cir.1996) ("[T]he touchstone for interpreting a submission must be the intention of the parties."). If an arbitrator oversteps the authority delegated by the parties, it is the duty of the reviewing court to rein him in.

**2.** Waiver was not argued to the initial panel.

*See Matteson v. Ryder Sys. Inc.,* 99 F.3d at 113–15 (reversing arbitral decision "[b]ecause the [arbitral tribunal] exceeded its authority as arbitrator by deciding issues not submitted to it by the [parties]"); *John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers,* 913 F.2d 544, 559–61 (8th Cir.1990) (affirming district court determination that arbitral decision was beyond scope of issues submitted because appellate court was "satisfied that the arbitrator was not 'even arguably ... acting within the scope of his authority' "), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991); *Bowater Carolina Co. v. Rock Hill Local Union No.1924,* 871 F.2d 23 (4th Cir. 1989) (directing district court to vacate decision on issue not submitted by parties); *Courier–Citizen Co. v. Boston Electrotypers Union No. 11,* 702 F.2d 273, 280–81 (1st Cir.1983) (vacating district court order enforcing back pay award to employee not mentioned in submission). Nonetheless, because the Hotel failed to object before the arbitrator to the expanded scope of the arbitration, it has waived any right to do so now.

